UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-21589-CIV-ALTONAGA/Simonton

WILLIAM C. SKYE,

    Plaintiff,
vs.

MAERSK LINE LIMITED
CORPORATION,

    Defendant.
_____/

## ORDER

**THIS CAUSE** came before the Court upon Defendant, Maersk Line Limited Corporation's ("Maersk['s]") Motion *In Limine* ("Motion") [ECF No. 86], filed on February 29, 2012. The Court has carefully reviewed the parties' written submissions and applicable law.

This case is a maritime personal injury action involving claims under the Jones Act and for unseaworthiness brought by Plaintiff, William C. Skye. At issue now are Maersk's *Daubert*[1] challenges to Skye's experts, as well as other areas of anticipated testimony and evidence that Maersk seeks to have excluded at trial.

### I. LEGAL STANDARDS

**A.**     **Federal Rule of Evidence 403**

"Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. Relevant evidence may be excluded if its probative value "is substantially outweighed by the danger of

---
[1] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

unfair prejudice." *Id.* 403. "'Unfair prejudice' within its [sic] context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id.* 403 advisory committee's note. A motion *in limine* is "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered," *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984), and is not a motion "to determine the sufficiency of the evidence or merits of an issue." *Soliday v. 7-Eleven, Inc.*, No. 2:09-cv-807-FtM-29SPC, 2011 U.S. Dist. LEXIS 42874, at *3 (M.D. Fla. Apr. 20, 2011) (citing *id.*). A district court's exclusion of relevant evidence due to the danger of unfair prejudice is an "extraordinary remedy which the district court should invoke sparingly," and "the balance . . . should be struck in favor of admissibility." *United States v. Dodds*, 347 F.3d 893, 897 (11th Cir. 2003) (quoting *United States v. Tinoco*, 304 F.3d 1088, 1120 (11th Cir. 2002)).

B.  **Federal Rule of Evidence 702**

Federal Rule of Evidence 702, which governs expert testimony, states as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702. Rule 702 requires district courts to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. This "gatekeeping" function must be performed with regard to the admissibility of both expert scientific evidence and expert technical evidence. *See United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (citing *Daubert*, 509 U.S. at 589 n.7, 597;

Case No. 11-21589-CIV-ALTONAGA/Simonton

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999)). "This function inherently requires the trial court to conduct an exacting analysis of the foundations of expert opinions to ensure they meet the standards for admissibility under Rule 702." *Id.* (alterations and internal quotation marks omitted).

In determining the admissibility of expert testimony, the Eleventh Circuit requires district courts to conduct a three-part inquiry about whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the applications of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183, 1194 (11th Cir. 2010) (citing *Frazier*, 387 F.3d at 1260). The burden is on the proponent of the expert testimony to show, by a preponderance of the evidence, that the testimony satisfies each prong. *See id.* (citing *Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care*, 582 F.3d 1227, 1232 (11th Cir. 2009)). In this case, as in *Hendrix*, only the second prong — reliability — is in dispute.[2] *See id.*

In *Daubert*, the Supreme Court suggested a non-exhaustive list of several factors to consider in determining if a specific methodology is reliable under Rule 702: whether the methodology can and has been tested; whether the methodology has been subjected to peer review and publication; the known or potential rate of error and the existence and maintenance of standards controlling operation of the methodology; and whether the methodology has gained general acceptance in the scientific community. *Daubert*, 509 U.S. at 593–94 (declining to set forth a "definitive checklist or test"); *accord Kumho*, 526

---

[2] While Maersk asserts that conclusions of Skye's experts will not assist the jury (*see, e.g.*, Mot. 9), that contention is premised on Maersk's attacks on the reliability of the experts' methods.

3

U.S. at 141. In *Kumho*, the Supreme Court emphasized, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho*, 526 U.S. at 152. Nevertheless, while the inquiry is "a flexible one," the focus "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 594–95. "But conclusions and methodology are not entirely distinct from one another . . . [and] nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). "Rather, the trial court is free to 'conclude that there is simply too great an analytical gap between the data and the opinion proffered.'" *Hendrix*, 609 F.3d at 1194 (quoting *Joiner*, 522 U.S. at 146).

## II. ANALYSIS

### A. Opinions of Dr. Wachspress

Maersk takes issue with the opinions of Dr. Wachspress, Skye's cardiologist, on three grounds. First, Maersk contends that in his report, Dr. Wachspress "identifies no reliable methodology" to support his conclusion that "'[Skye's] job caused [him] to develop ventricular hypertrophy,'" and therefore he should be excluded as failing *Daubert*'s requirements. (Mot. 9 (quoting Wachspress Report [ECF No. 86-6])). Second, Dr. Wachspress's comments on Skye's finances should be excluded as that subject falls outside the area of Dr. Wachspress's expertise and is not otherwise admissible. Third, articles Dr. Wachspress attached to his report should be excluded because the "articles are not sufficiently trustworthy to be admissible, and the minimal probative value does not substantially outweigh the resulting prejudice." (Mot. 13).

As to the first ground, it appears Dr. Wachspress was not deposed until after the Motion was fully briefed. (*See* Resp. 17 (noting that Dr. Wachspress's deposition was scheduled for April 2, 2012); Reply (containing no reference to Dr. Wachspress's deposition although the brief was filed on April 2, 2012)). In any event, neither party has informed the Court of the content of the deposition, which may elucidate Dr. Wachspress's methodology. Accordingly, the Court reserves judgment on this issue. The parties may raise it at trial outside the presence of the jury for the Court's consideration.

Next, Skye does not respond to Maersk's second ground concerning Dr. Wachspress's comments on Skye's finances. The Court agrees that Dr. Wachspress is not an expert on financial issues. Indeed, he does not hold himself out as such. For these reasons, the Court grants Maersk's request on this issue.

Finally, regarding the articles attached to Dr. Wachspress's report — the admissibility of which Maersk contests in ground three — Skye asserts they are admissible as learned treatises. (*See* Resp. 20). As a preliminary matter, even when statements in learned treatises are admissible, they "may be read into evidence but not received as an exhibit." FED. R. EVID. 803(18). As observed by the Third Circuit, this requirement "avoids the danger of misunderstanding and misapplication by limiting the use of treatises as substantive evidence to situations in which an expert is on the stand and available to explain and assist in the application of the treatise if desired. The limitation upon receiving the publication itself physically in evidence . . . is designed to further this policy." *Bair v. Am. Motors Corp.*, 473 F.2d 740, 744–45 (3d Cir. 1973) (citation and internal quotation marks omitted).

Given the limitations imposed by Rule 803(18), the articles are inadmissible as exhibits. However, should Skye wish to introduce at trial relevant statements from the articles, he may do so — to the extent they have been relied on by an expert witness, such as Dr. Wachspress, in the formulation of his direct testimony — by having his witnesses read the statements into the record. *See* FED. R. EVID. 803(18). *See, e.g.*, *Fisher v. United States*, 78 Fed. Cl. 710, 714 (Fed. Cl. 2007) (excluding books and articles from admission as exhibits, but permitting statements to be read pursuant to Rule 803(18)). Additionally, Maersk's contention that the articles are wholesale "irrelevant" or "not sufficiently trustworthy" (Mot. 12, 13), is more appropriately raised upon cross-examination of the expert witness. *See Fisher*, 78 Fed. Cl. at 714 ("Once the expert witness has recognized that the publication is authoritative, it is, of course, appropriate to cross-examine the expert with regard to statements it contains." (citation and internal quotation marks omitted)).

B.   **Opinions of Dr. Goldman**

Maersk asks the Court to limit the admission of Dr. Goldman's opinions by excluding (1) his opinions regarding Skye's cardiac condition and its etiology, namely that "changes in [Skye's] heart can only be due to hypertension" (Mot. 14 (quoting Goldman Report [ECF No. 86-3]); and (2) his assignment of a disability rating for mental disorders according to a Department of Veterans Affairs schedule ("V.A. schedule"). (*See* Mot. 15; *id.* 16 (noting Dr. Goldman assigned a 70% disability rating for adjustment disorder)).

On the first issue, Maersk emphasizes that Dr. Goldman is a psychiatrist, not a cardiologist, and therefore should not be permitted to opine on cardiac issues as they are

outside his field of expertise. (*See id.* 14). While Dr. Goldman's specialization is psychiatry, he is a physician who practiced for two years prior to beginning his psychiatric residency (*see* Goldman CV 1 [ECF No. 92-9]), and he has treated patients for fifty years. (*See* Resp. 21). Based on his experience and training as a general physician, certainly Dr. Goldman may opine on physiological effects of hypertension. *See, e.g.*, *Payton v. Abbott Labs*, 780 F.2d 147, 155 (1st Cir. 1985) ("The fact that the physician is not a specialist in the field in which he is giving his opinion affects not the admissibility of his opinion but the weight the jury may place on it." (citation omitted)); *Cree v. Hatcher*, 969 F.2d 34, 38 n.5 (3d Cir. 1992) (citing *id.*); *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1431 (5th Cir. 1989) (citing *Payton*, 780 F.2d at 155); *see also Quinton v. Farmland Indus., Inc.*, 928 F.2d 335, 337 (10th Cir. 1991) ("Th[e] assumption about the insufficiency of general medical study, which reflects the implausible view that such training qualifies a doctor to diagnose and treat a wide range of physical disorders in the real world but not to render expert opinions about particular examples in the courtroom, has been expressly rejected in the case of physicians." (citations omitted)).

On the second issue, Maersk states, and Skye does not contest, that the V.A. schedule used by Dr. Goldman pertains to military veterans. (*See* Mot. 15 (citation omitted)). In applying the V.A. schedule, the Department of Veterans Affairs specifically requires:

> When evaluating a mental disorder, the rating agency shall consider the frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the veteran's capacity for adjustment during periods of remission. The rating agency shall assign an evaluation based on all the evidence of record that bears on occupational and social impairment rather than solely on the examiner's assessment of the level of disability at the moment of the examination.

38 C.F.R. § 4.126(a). The Department further requires: "Rating agencies must be thoroughly familiar with this manual to properly implement the directives in § 4.125 through § 4.129 and to apply the general rating formula for mental disorders in § 4.130." 38 C.F.R. § 4.130. Hence, the rating agency and examiner are distinct, and necessarily so as the regulations permit a disability rating to be assigned only upon "an evaluation based on all the evidence of record . . . rather than solely on the examiner's assessment of the level of disability at the moment of the examination." 38 C.F.R. § 4.126(a).

While Dr. Goldman may have served in the military for two years (*see* Goldman CV 1), the Court finds no indication in his report, nor has Skye identified any evidence showing, that he is "thoroughly familiar" with the Department's manual, as the regulations require. Moreover, Dr. Goldman expressly states that he arrived at a 70% rating upon "review[ing] my report and original notes that were the basis of my report of July 15, 2008 following his evaluations of July 8 and 14, 2008" (Second Goldman Report [ECF No. 86-7]), which does not amount to an entire examination of the record beyond Dr. Goldman's assessments, contrary to what the regulations contemplate. Thus, even if a V.A. disability rating could be derived outside the Department of Veterans Affairs, and even if such a rating would be probative in this civil case, Skye has failed to show that Dr. Goldman applied the V.A. rating system in accord with its accompanying regulations and predicates. In sum, Skye has failed to demonstrate that Dr. Goldman properly used the V.A. schedule. Because Dr. Goldman's rating assignment is unreliable, Maersk's request to preclude Dr. Goldman's disability rating is granted.

**C.     Opinions of Dr. Lessne**

Maersk attacks the opinions of Skye's vocational rehabilitation and economics

expert, Dr. Lessne, for failing to satisfy *Daubert*'s standards because he applied Dr. Goldman's 70% disability rating. (*See* Mot. 8). As the Court previously discussed, Dr. Goldman's disability rating is unreliable. Therefore, any of Dr. Lessne's opinions that are premised on Dr. Goldman's rating are also unreliable and do not pass muster under *Daubert*.[3]

Dr. Lessne's opinions also include separate determinations of (1) the age up to which Skye's damages should be calculated; (2) the number of hours of work for which Skye would have been compensated had he been able to continue his employment; (3) the value of lost fringe benefits associated with working on board the vessel; (4) use of Skye's estimated earnings as an attorney, as opposed to alternative careers, to calculate lost earnings; (5) consideration that the salary earned as a chief mate can grow over time, with no similar consideration to an attorney's earnings, all of which Maersk takes issue with because Dr. Lessne's opinions are not "based on reliable data, lack any identifiable scientific methodology[,] and fail to take into account several pertinent facts." (*Id.* 8; *see id.* 7–8). The Court addresses each specific objection in turn.

According to Maersk, Dr. Lessne's opinions are "nothing more than his own *ipse dixit*," as was found in *Rinker v. Carnival Corp.*, Case No. 09-23154-CIV-SEITZ/SIMONTON, 2012 U.S. Dist. LEXIS 1908 (S.D. Fla. Jan. 6, 2012). In *Rinker*, Dr. Lessne was the plaintiff's vocational rehabilitation, employment, ergonomics, and economics expert. *See id.* at *1. Upon examining Dr. Lessne's opinions, the *Rinker*

---

[3] Although Maersk also raised the issue that Dr. Lessne's opinions would be rightly excluded under Federal Rule of Evidence 403 as they account for only Skye's adjustment disorder (by adopting Dr. Goldman's disability rating), and not for any physical injury (*see* Mot. 2–3), the Court need not reach this issue. In any event, the Court observes that because Dr. Lessne premised his calculations on Skye's inability to continue working as a chief mate — which Skye contends is due to his physical injury — it appears that Dr. Lessne does not rest his opinions solely on the impact of Skye's adjustment disorder.

9

court found that "Dr. Lessne's report and its conclusions lack 'fit' with the facts of this case" because his report was based on the life expectancy of a healthy 62-year-old woman, not a 62-year-old woman with stage three colon cancer, as were the circumstances in the action. *Id.* at *3. Further, Dr. Lessne failed to indicate "where or how" he developed figures associated with the life care plan he developed, which took into account, among other things, future medical care needs and their costs. *Id.* at *4. Indeed, he admitted that the projected medical care and frequency estimates were "simply his opinion." *Id.* at *5.

Certainly, Dr. Lessne's decisions in this matter to use certain data over others implicate his methodology. However, the situation here differs from that in *Rinker*. In this case, Maersk does not contend that Dr. Lessne's opinions are not founded on record evidence — as was the case in *Rinker* — but rather asserts that other available evidence should have instead been factored into Dr. Lessne's calculations. Indeed, Skye identifies evidence in the record that supports Dr. Lessne's decision to apply certain values to variables in his calculations. For example, instead of determining that Skye would likely have retired at the age of 61 from a chief mate position (based on the average retirement age of union members) were it not for Skye's alleged injuries, Dr. Lessne found that Skye would have retired at 71 based on a particular work life expectancy table. (*See* Mot. 7). Maersk does not contend that Dr. Lessne applied the work life table improperly; rather, that the work life table does not expressly state that it applies to shipboard work. (*See id.*). As it turns out, the information provided by the work life expectancy table is not wholly "inapplicable" or incorrect as claimed by Maersk because the record includes evidence that there was at least one chief mate who worked past the age of 70. (*See*

Resp. 12 (citing McCright Dep. 83:3–18 [ECF No. 92-7])). Simply because Maersk believes that other record evidence is *more* reliable than the evidence relied upon by Dr. Lessne does not render the opinion unreliable.

That Dr. Lessne relied in his calculations on an extrapolation of the number of overtime hours previously worked by Skye — instead of discounting the number of hours by the amount Skye contends he should not have originally been required to work — also does not compel that Dr. Lessne's opinions be excluded under *Daubert*. "*Daubert* does not require that the party who proffers expert testimony carry the burden of proving to the judge that the expert's assessment of the situation is correct. . . . It demands only that the proponent of the evidence show that the expert's conclusion has been arrived at in a scientifically sound and methodologically reliable fashion." *United States v. Mooney*, 315 F.3d 54, 63 (1st Cir. 2002) (citation and internal quotation marks omitted). The core of Maersk's argument is an objection to Skye's theory of damages. (*See* Mot. 7 ("Plaintiff's liability theory in this case is that he should not have been working that amount of overtime. However, he seeks to recover damages for the allegedly lost opportunity to work the overtime he should not have been working. This reasoning defies all common sense.")). Whether Plaintiff's damages theory makes "sense" does not bear on whether Dr. Lessne's methodology for calculating those damages is scientifically sound.

Next, Maersk challenges Dr. Lessne's calculation of the value of lost fringe benefits because he premised his calculation on Skye's receipt of such benefits over the course of an entire year, as opposed to only the portion of the year when Skye was out at sea. (*See id.* 8). Skye asserts that he is contractually entitled to 365 days' worth of fringe

benefits.  (*See* Resp. 13).  Maersk responds that Dr. Lessne's own understanding of the fringe benefits was that they were received by Skye "at sea" (Lessne Report 11 [ECF No. 92-4]), and that Skye's contract does not provide for fringe benefits while on shore.  (*See* Reply 6–7).  The crux of this issue, then, hinges not on whether Dr. Lessne's methodology is sound, but whether Skye was contractually entitled to fringe benefits while he was both at sea and on paid vacation (a question of law); and if not, how many days of fringe benefits per year Skye should receive (a question of fact).  Accordingly, resolution of this issue is not appropriate on a motion *in limine*.  *See Soliday*, 2011 U.S. Dist. LEXIS 42874, at *3.

As to Maersk's last two objections regarding the calculation of Skye's lost earnings based upon an alternative career as an attorney, Skye clarified that while he may be eligible for a host of other career options, Dr. Lessne opted for the most profitable vocation, thereby rendering his damages estimate more conservative than it might otherwise have been.  (*See* Resp. 14).  Skye also clarified that Dr. Lessne did not factor a growth rate into both his estimates of a chief mate's salary and an attorney's salary, and that any "growth" in Skye's chief mate's salary was attributed to contractual increases.  (*See id.* 14–15).  Maersk responds to these clarifications by reiterating that Dr. Lessne "ignored the other employment options available to Plaintiff," and failed to consider Plaintiff's "additional income sources."  (Reply 7).

Maersk's contention that Dr. Lessne ignored Skye's other employment options does not appear to be borne out by the record.  Indeed, Dr. Lessne explained why he did not base his calculations on other careers or why he did not think certain other careers were appropriate even if he did not initially consider them.  (*See* Lessne Dep. 71–75

[ECF No. 92-5]). Maersk's objection, then, distills to a disapproval of Dr. Lessne's failure to discount earnings based on "*additional* income sources." (Reply 7 (emphasis added)). On the record presented by the parties, it is unclear whether Skye's other sources of income, such as farm income, would not have otherwise been earned had he continued to work for Maersk. Accordingly, the Court finds that Dr. Lessne's opinions as to projected salaries (notwithstanding the 70% disability deduction already excluded) are permissible.

**D.     Evidence of Operational Negligence aboard the Vessel from 2000–2004**

Maersk argues that because it had no operational control over the vessel from 2000 to 2004, evidence of operational negligence aboard the vessel during that time should be excluded. (*See* Mot. 16–17). The Court reminds Maersk that in the Order denying Maersk's motion for summary judgment (*see* Order dated Mar. 28, 2012 [ECF No. 8]), the Court found that genuine issues of material fact remain as to whether Maersk's involvement with the vessel between the years 2000 and 2004 renders it liable for Skye's claims. (*See id.* 7). In the present request, Maersk essentially asks the Court to rule on an issue of law the Court has previously examined. Such a request is not properly before the Court on a motion *in limine* and therefore is denied. *See Soliday*, 2011 U.S. Dist. LEXIS 42874, at *3.

**E.     Presentation of Time-Barred Claims**

On this issue, Maersk asks: "If the Court finds that some of Plaintiff's claims are time-barred, but a trial is necessary to adjudicate other issues, then the Plaintiff should not be permitted to present evidence of his time-barred allegations." (Mot. 17). The Court is at a loss as to what kind of relief Maersk seeks. Certainly, claims that have

already been determined to be time-barred as a matter of law shall not be presented to the jury. However, the issue in this case is not that Skye wishes to present time-barred claims (*see* Resp. 22–23), but rather whether Skye's claims are indeed time-barred — and such a determination hinges on questions of material fact. (*See* Order dated Mar. 28, 2012, at 6–7). Moreover, as with its request pertaining to evidence of operational negligence from 2000–2004, Maersk appears to ask the Court to rule on an issue of law the Court has previously examined. The request is denied. *See Soliday*, 2011 U.S. Dist. LEXIS 42874, at *3.

F. **Evidence of Other Cardiac Events**

Maersk wishes to preclude evidence of heart attacks suffered by other Maersk employees because Skye has failed to demonstrate that those heart attacks are substantially similar to the medical condition or surrounding circumstances alleged by Skye. (*See* Mot. 18). Skye agrees that he must demonstrate "substantial similarity" before evidence of the heart attacks may be presented to the jury, but he does not engage in a detailed discussion of the circumstances surrounding each heart attack. (*See* Resp. 23 (citing *Heath v. Suzuki Motor Corp.*, 126 F.3d 1391, 1397 (11th Cir. 1997)). Rather, Skye cites to deposition testimony of Maersk's corporate representative, who states that Maersk "probably ha[s] had a member come off for a condition similar to Mr. Skye, in regards to possible hypertension or high blood pressure, though I'm sure a mariner has come off not fit for duty for those reasons" (Robbins Dep. 16:6–11 [ECF No. 92-1]), and that "most of [Maersk's employees who had been declared unfit for duty because of heart conditions] had like preexisting conditions, and it's just elevated itself onboard." (*Id.* 24:19–21). Such statements offer no explanation as to how the particular five heart

attacks Skye wishes to introduce into evidence are "substantially similar" to Skye's own injury. Based on this record, Maersk's request on this issue is granted.

### III. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that the Motion **[ECF No. 86]** is **GRANTED IN PART and DENIED IN PART**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 13th day of April, 2012.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record