# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

FILED BY __MC__
Jul 22, 2014
STEVEN M. LARIMORE
CLERK U.S. DISTRICT CT.
S.D. OF FLA. MIAMI

John Ley
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

July 22, 2014

Steven M. Larimore
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number:  12-16433-AA
Case Style: William Skye v. Maersk Line
District Court Docket No: 1:11-cv-21589-CMA

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

Sincerely,

JOHN LEY, Clerk of Court

Reply to:  Regina A. Veals-Gillis
Phone #:  (404) 335-6163

Enclosure(s)

MDT-1 Letter Issuing Mandate

## UNITED STATES COURT OF APPEALS
### For the Eleventh Circuit

_____

No. 12-16433
_____

District Court Docket No.
1:11-cv-21589-CMA

WILLIAM C. SKYE,

           Plaintiff - Appellee,

versus

MAERSK LINE,
Limited Corporation,
d.b.a. Maersk Line Limited,

           Defendant - Appellant.

_____

Appeal from the United States District Court for the
Southern District of Florida
_____

### JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is entered as the judgment of this Court.

Entered: May 15, 2014
For the Court: John Ley, Clerk of Court
By: Jeff R. Patch

**ISSUED AS MANDATE: 07/22/2014**

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-16433

_____

D.C. Docket No. 1:11-cv-21589-CMA

WILLIAM C. SKYE,

                                                            Plaintiff–Appellee,

versus

MAERSK LINE,
Limited Corporation,
d.b.a. Maersk Line Limited,

                                                            Defendant–Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 15, 2014)

Before PRYOR, JORDAN, and FAY, Circuit Judges.

PRYOR, Circuit Judge:

      This appeal requires us to decide whether a seaman can recover money damages under the Jones Act, 46 U.S.C. § 30104, for an injury stemming from

excessive work hours and an erratic sleep schedule. William Skye, formerly the chief mate of the *Sealand Pride*, a commercial vessel, suffers from left ventricular hypertrophy, which he complained that his employer, Maersk Line Limited Corporation d/b/a Maersk Line Limited, caused when it negligently saddled him with "excessive duties and duty time" such that he was "overworked to the point of fatigue." At trial, the jury found Maersk liable to Skye, who the jury found suffered damages of $2,362,299.00, which the district court reduced to $590,574.75 to account for Skye's comparative negligence. Maersk moved for a judgment as a matter of law on the ground that the decision of the Supreme Court in *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 114 S. Ct. 2396 (1994), barred Skye's complaint. The district court denied that motion and entered judgment in favor of Skye. We **REVERSE** the denial of the motion for a judgment as a matter of law and **RENDER** judgment in favor of Maersk because Skye's complaint of an injury caused by work-related stress is not cognizable under the Jones Act, which concerns injuries caused by physical perils. *See Gottshall*, 512 U.S. at 558, 114 S. Ct. at 2411–12.

## I. BACKGROUND

Between 2000 and 2008, William Skye worked on the *Sealand Pride* as chief mate. The *Sealand Pride* was first chartered and later operated by Maersk. Skye's job duties required him to work overtime, which adversely affected his

2

health because of fatigue, stress, and lack of sleep. Skye regularly worked between 90 and 105 hours per week for 70 or 84 days at a time. At sea, Skye worked 12 hours; in port, he might have worked "round the clock."

In 2000, Skye's cardiologist diagnosed him with a benign arrhythmia and recommended that Skye change his diet and rest more. In 2003, Skye returned to his cardiologist, who said his diagnosis had not changed. Skye's symptoms worsened in 2004 when Maersk began directly managing the *Sealand Pride* and increased his duty time. Skye worked 12 to 15 percent more overtime hours. And his working hours were replete with arduous duties: logging in cargo carrying hazardous material at various ports for eight hours at a time; inspecting roughly 144 "reefers," which are refrigerated containers, to ensure they were keeping cargo cold; repairing "cell guides," which hold cargo containers; and descending six stories via ladders and manholes into the hull of the *Sealand Pride* to inspect and repair the interior of the ballast tanks, which hold water to balance the ship.

By 2008, Skye was experiencing headaches, a sore back, and a burning sensation in his chest in addition to his arrhythmia, so Skye returned to his cardiologist, who diagnosed him with left ventricular hypertrophy, a thickening of the heart wall of the left ventricle, which his cardiologist attributed to hypertension. Skye's cardiologist concluded that Skye's "continued physical stress related to his job, with long hours and lack of sleep" caused his labile

hypertension—intermittent high blood pressure while on the job—which, in turn, caused his left ventricular hypertrophy. The cardiologist advised Skye to stop working on the vessel.

In 2011, Skye filed a complaint against Maersk for negligence under the Jones Act. Skye alleged that his working conditions caused his left ventricular hypertrophy and that Maersk was negligent when it failed to provide him with reasonable working hours, an adequate crew, and adequate rest hours and instead "overworked [him] to the point of fatigue." He alleged that these working conditions led to "physical damage to [his] heart."

At trial, Skye and his cardiologist testified that his excessive hours and resulting stress were the most likely causes of his injury. Skye testified that his arduous work schedule and his lack of sleep had an adverse effect on his health. His cardiologist testified that Skye's working conditions "were a substantial contribution" to his left ventricular hypertrophy. The cardiologist opined that Skye developed labile hypertension because of the "stress of his job as chief mate" and "the lack of regular sleep," which in turn "caused the left ventricular hypertrophy." The cardiologist explained that "people who live under constant physical stress secrete large amounts of adrenaline" as part of a "fight or flight response." And when "adrenaline is secreted for long periods of the day, that has a deleterious effect on their health." He continued, "Long working hours and stress can lead to

4

this fight or flight response, and that, in turn, can lead to left ventricular hypertrophy."

At the conclusion of trial, Maersk moved for a directed verdict on the grounds that Skye could not recover for money damages for an injury caused by work-related stress and, alternatively, that the statute of limitations barred his claim. Maersk argued that *Gottshall*, in which the Supreme Court held that plaintiffs could not recover for work-related stress under the Federal Employers' Liability Act, barred Skye's claim as a matter of law. The district court denied the motion.

Before the jury deliberated, the court instructed the jury as follows that it must decide whether Skye's injury and its causes were physical or emotional:

> The law holds that a seaman such as the plaintiff cannot receive compensation for a purely emotional injury. A purely emotional injury is an injury that has no physical causes, but, rather was solely caused by the injured person's perception of a nonphysical stress. The injured person, however, may receive compensation for an injury caused in any part by physical stress. You will need to determine whether plaintiff's injury is a physical one or an emotional one. If you determine it is an emotional one, in order to recover, plaintiff has the burden of proving by a preponderance of the evidence that his injury was sustained as a result of his fear for his own physical safety or incurred while in a zone of immediate physical danger.

The district court provided the jury with a special verdict form that required it to decide whether Skye's injury was "physical" or "emotional."

The jury returned a verdict finding that Skye sustained a physical injury, but that Skye was 75 percent at fault for his injuries. It found that Skye suffered damages of $2,362,299.00, which the district court reduced to $590,574.75 to account for Skye's comparative negligence. After the verdict, Maersk moved for a judgment as a matter of law, which the district court denied.

## II. STANDARD OF REVIEW

We review the denial of a motion for a judgment as a matter of law de novo and apply the same standards as the district court. *Ash v. Tyson Foods, Inc.*, 664 F.3d 883, 892 (11th Cir. 2011). We will reverse the denial of a motion for a judgment as a matter of law "only if the facts and inferences point overwhelmingly in favor of one party, such that reasonable people could not arrive at a contrary verdict." *Id.* (internal quotation mark omitted). "We will not second-guess the jury or substitute our judgment for its judgment if its verdict is supported by sufficient evidence." *Lambert v. Fulton Cnty., Ga.*, 253 F.3d 588, 594 (11th Cir. 2001). "We view all the evidence and draw all inferences from it in the light most favorable to . . . the nonmoving party." *Ash*, 664 F.3d at 892.

## III. DISCUSSION

The Jones Act provides a cause of action in negligence for "a seaman" personally injured "in the course of employment," 46 U.S.C. § 30104, in the same way that the Federal Employers' Liability Act provides a cause of action in

negligence for injured railroad employees against their employers, 45 U.S.C. §§ 51–60. The Jones Act incorporated the remedial scheme of the Federal Employers' Liability Act, and case law interpreting the latter statute also applies to the Jones Act. 46 U.S.C. § 30104 ("Laws of the United States regulating recovery for personal injury to, or death of, a railway employee apply to an action under this section."); *see also O'Donnell v. Great Lakes Dredge & Dock Co.*, 318 U.S. 36, 38–39, 63 S. Ct. 488, 490 (1943).

Not all work-related injuries are cognizable under the Federal Employers' Liability Act and, by extension, the Jones Act. *See Gottshall*, 512 U.S. at 555–56, 114 S. Ct. at 2410–11. The Supreme Court has made clear that these statutes are "aimed at ensuring 'the security of the person from *physical invasions* or menaces.'" *Id.* (emphasis added) (quoting *Lancaster v. Norfolk & W. Ry. Co.*, 773 F.2d 807, 813 (7th Cir. 1985)). For employers to be liable, the employees' injuries must be "caused by the negligent conduct of their employers that threatens them imminently with physical impact." *Id.* at 556, 114 S. Ct. at 2411.

Skye's injury is not cognizable under the Jones Act even when we draw all inferences from the evidence presented to the jury in the light most favorable to him and assume that his work schedule caused him to develop left ventricular hypertrophy. The Jones Act does not allow seaman to recover for injuries caused by work-related stress because work-related stress is not a "physical peril[]." *Id.* at

7

555, 114 S. Ct. at 2410. The district court erred when it denied the motion of Maersk for a judgment in its favor as a matter of law.

Skye's complaint fails for the same reason that plaintiff Alan Carlisle's complaint failed in *Gottshall*. In *Gottshall*, the Supreme Court ruled that injuries caused by the long-term effects of work-related stress are not cognizable under the Federal Employers' Liability Act because they are not caused by any physical impact or fear from the threat of physical impact. 512 U.S. at 558, 114 S. Ct. at 2411–12. Carlisle sued his employer after suffering from insomnia, headaches, depression, weight loss, and a nervous breakdown attributable to "work[ing] 12- to 15-hour shifts for weeks at a time." *Id.* at 539, 114 S. Ct. at 2402. Carlisle alleged that his employer failed to provide him with a safe workplace "by forcing him to work under unreasonably stressful conditions" and that its failure "resulted in foreseeable stress-related health problems." *Id.* The Supreme Court adopted the zone-of-danger test for injuries not caused by a physical impact; Carlisle's injuries were compensable only if Carlisle was injured when he was within the zone of danger of a physical impact caused by his employer's negligence. *Id.* at 556, 114 S. Ct. at 2410–11 ("[A] worker within the zone of danger of physical impact will be able to recover for emotional injury caused by fear of physical injury to himself, whereas a worker outside the zone will not."). The Supreme Court held that "Carlisle's work-stress-related claim plainly does not fall within the common law's

8

conception of the zone of danger, and Carlisle makes no argument that it does. . . . [W]e will not take the radical step of reading [the Federal Employers' Liability Act] as compensating for stress arising in the ordinary course of employment." *Id.* at 558, 114 S. Ct. at 2411–12; *see also Smith v. Union Pac. R.R. Co.*, 236 F.3d 1168, 1173–74 (10th Cir. 2000) ("[A] work schedule is not the physical peril against which [the Federal Employers' Liability Act] protects."); *Szymanski v. Columbia Transp. Co.*, 154 F.3d 591, 594–95 (6th Cir. 1998) (en banc) (holding that the estate of a seaman could not recover under the Jones Act for a fatal heart attack allegedly induced by excessive work hours); *Crown v. Union Pac. R.R. Co.*, 162 F.3d 984, 985 (8th Cir. 1998) (refusing recovery for extreme weight gain, carpal tunnel syndrome, knee joint problems, cough syncope syndrome, sleep apnea, diabetes, various addictions, and a nervous breakdown, all of which were attributable to excessive work hours).

Under *Gottshall*, Skye's complaint is not cognizable under the Jones Act. His complaint parallels Carlisle's complaint of an injury induced by overwork. Skye complained that he was "injured while aboard the vessel" because "[r]educed manning and other conditions caused excessive duties and duty time." And Skye alleged that Maersk was negligent when it "[f]ail[ed] to provide [him] with reasonable working hours," "adequate personnel, time, and equipment," and "adequate rest hours," and "overworked [him] to the point of fatigue."

As the Supreme Court explained in *Gottshall*, the "central focus" of the Federal Employers' Liability Act, and the Jones Act by extension, is "on physical perils." 512 U.S. at 555, 114 S. Ct. at 2410. An arduous work schedule and an irregular sleep schedule are not physical perils. That Skye developed a "physical injury" is no matter; the *cause* of his injury was work-related stress. *See Szymanski*, 154 F.3d at 594–95. Carlisle too had physical injuries—weight loss and headaches—but a physical injury is not enough. *Gottshall*, 512 U.S. at 539, 558, 114 S. Ct. 2402, 2411–12. Compensating Skye for his injury would potentially lead to, in the words of the Supreme Court, "a flood of trivial suits, the possibility of fraudulent claims . . . and the specter of unlimited and unpredictable liability" because there is no way to predict what effect a stressful work environment—compared to a physical accident such as an exploding boiler—would have on any given employee. *See id.* at 557, 114 S. Ct. at 2411. Skye's complaint of a physical injury caused by work-related stress is foreclosed by binding precedent of the Supreme Court, and the judgment in his favor cannot stand as a matter of law. *Id.* at 558, 114 S. Ct. at 2411–12. Because we decide that Skye's complaint is not cognizable under the Jones Act, we need not decide whether the statute of limitations bars his claim.

## IV. CONCLUSION

We **VACATE** the judgment awarding Skye $590,574.75. We **REVERSE** the denial of the motion of Maersk for a judgment as a matter of law and **RENDER** judgment in favor of Maersk.

FAY, Circuit Judge, concurring specially:

I concur in the court's opinion, because we are bound by the decision of the Supreme Court in *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 114 S. Ct. 2396 (1994). In my view, however, the majority opinion in that case is contrary to the language, purpose, and spirit of the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*, and the Jones Act, 46 U.S.C. § 30104, concerning a seaman's recovery of damages for a job-related injury. The core purpose of both is to provide covered employees with a safe place to work. Being required to work 90 and 105 hours per week for 70 or 84 days at a time is hardly being given a safe place to work. I fail to see the difference between being given a defective piece of equipment and being required to work outrageous hours, in determining whether or not the workplace was safe. Surely, an employer is no less negligent in doing either.

Most respectfully, my hope is that the Supreme Court will revisit this area of the law. As Justice Ginsburg stated in her dissent in *Gottshall*: "Instead of the restrictive 'zone' test that leaves severely harmed workers remediless, however negligent their employers, the appropriate FELA claim threshold should be keyed to the genuineness and gravity of the worker's injury." *Gottshall*, 512 U.S. at 572, 114 S. Ct. at 2419 (Ginsburg, J., dissenting).

JORDAN, Circuit Judge, dissenting:

With respect, I dissent.

William Skye alleged, and proved to the satisfaction of a jury, that he suffered physical damage to his heart as a result of Maersk forcing him to work for an excessive number of hours (about 16 hours a day on average) without providing him adequate periods of rest. Like the district court, I do not think that Mr. Skye's claim under the Jones Act, 46 U.S.C. § 30104, constituted a claim for negligent infliction of emotional distress, i.e., "mental or emotional harm (such as fright or anxiety) that is caused by the negligence of another that is not directly brought about by a physical injury, but may manifest itself in physical symptoms." *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 544 (1994).

The verdict form asked the jury whether Mr. Skye sustained a "physical injury" or an "emotional injury." The jury specifically found that Mr. Skye sustained *only* a physical injury due to Maersk's negligence, and characterized this injury as "left ventricular hypertrophy," a thickening of the heart wall which can affect the pumping of blood in the ventricle and lead to congestive heart failure. *See* Verdict Form, D.E. 158 at 1, 2; Trial Tr., D.E. 166 at 606. We owe "great deference" to the jury's factual findings, *Grant v. Preferred Research, Inc.*, 885 F.2d 795, 798 (11th Cir. 1989), and I do not believe we can say, as a matter of law on this record, that Mr. Skye's injury was purely emotional. *See also Quality*

*Foods, Inc. v. U.S. Fire Ins. Co.*, 715 F.2d 539, 543 (11th Cir. 1983) ("We cannot over emphasize [*sic*] the great weight and deference which must be given to jury verdicts."). As a result, the zone of danger test articulated in *Gottshall* does not apply. *See Gottshall*, 512 U.S. at 547-48 (adopting zone of danger test to "limit[ ] recovery for emotional injury to those plaintiffs who sustain a physical impact as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct").

I recognize that federal and state courts are divided about the scope of *Gottshall*. Some courts have read *Gottshall* more broadly, as the majority does, while others have interpreted it more narrowly, as I do. *Compare, e.g.*, *Szymanski v. Columbia Transp. Co.*, 154 F.3d 591, 594-95 (6th Cir. 1998) (10-3 en banc decision), *and Capriottti v. Consolidated Rail Corp.*, 878 F. Supp. 429, 432-33 (N.D.N.Y. 1995), *with, e.g.*, *Walsh v. Consolidated Rail Corp.*, 937 F.Supp. 380, 387-89 (E.D. Pa. 1996), *and Duncan v. Am. Commercial Barge Line, LLC*, 166 S.W.3d 78, 83-84 (Mo. App. E.D. 2004). As I see it, the more constrained reading of *Gottshall* is supported by the Supreme Court's more recent decision in *Norfolk & Western Railway Co. v. Ayers*, 538 U.S. 135, 157 (2003), which distinguished *Gottshall* and held that "an asbestosis sufferer [can] seek compensation for fear of cancer as an element of his asbestosis-related pain and suffering damages." In the words of *Ayers,* "[t]he plaintiffs in *Gottshall* and [*Metro-North Commuter Railroad*

14

*Co. v. Buckley*, 521 U.S. 424 (1997)] grounded their suits on claims of negligent infliction of emotional distress.  The claimants before us, in contrast, complain of a negligently inflicted physical injury (asbestosis) and attendant pain and suffering." *Id.* at 148.  Like the claimants in *Ayers*, Mr. Skye is complaining of a negligently inflicted physical injury—left ventricular hypertrophy.

Congress enacted the Jones Act "for the benefit and protection of seamen who are peculiarly the wards of admiralty."  *Atl. Sounding Co. v. Townsend*, 557 U.S. 404, 417 (2009) (internal quotation marks omitted).  Given that purpose, and absent definitive indication from the Supreme Court, I would not read the Jones Act to preclude liability for an employer who makes a seaman work so hard and so continuously that he suffers physical injury in the form of heart disease, heart attack, organ failure, seizure, or stroke.